1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TYRONE INGRAM,

11            Plaintiff,                    No. 2:11-cv-2507-EFB P

12        vs.

13   B. HAMKAR, et al.,
                                            ORDER AND
14            Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16        Plaintiff is a state prisoner proceeding without counsel in a civil rights action brought

17   under 42 U.S.C. § 1983.  Defendants move to dismiss for failure to state a claim.  Dckt. No. 30.

18   For the reasons explained below, the motion must be granted in part and denied in part.

19   **I.      The Complaint**

20        This action proceeds on the verified amended complaint filed on May 24, 2012.  Dckt.

21   No. 13.  Plaintiff asserts that defendants denied him adequate medical care when he was housed

22   at California State Prison, Sacramento ("CSP-Sac").  *Id.*  Specifically, he claims that he had a

23   knee injury that presented a serious medical need and that defendant Hamkar (his prison

24   physician) was deliberately indifferent to that need from July 15, 2008 until the date of the

25   complaint (filed September 22, 2011).  Plaintiff alleges that Hamkar: (1) did not provide a stable

26   brace for plaintiff's knee at various times during that period, (2) did not order a brace with

1

1  plastic parts (instead ordering a brace with metal parts that were removed for security purposes,

2  rendering the brace ineffective), (3) did not order that plaintiff be housed in the prison's

3  Outpatient Housing Unit, where his movement would have been limited, and (4) ordered that

4  plaintiff's knee brace be confiscated on January 5, 2011.  *Id.* at 4, 13.  Plaintiff alleges that

5  defendant Thorpe (a prison nurse) was deliberately indifferent to his knee injury when she

6  confiscated the brace on January 5, 2011.  *Id.* at 4-5.

7         Medical records attached to the complaint show that plaintiff submitted a request for a

8  knee brace on April 13, 2010.  *Id.* at 52 ("I need a new knee brace and having pain in right

9  knee").  An orthopedist at San Joaquin General Hospital recommended that plaintiff be provided

10 an "ACL brace" on October 8, 2010.  *Id.* at 12.  Plaintiff submitted another request for a brace on

11 October 31, 2010.  *Id.* at 50 ("I need a brace on rt knee . . . and I'm in a great deal of pain.").

12        Plaintiff underwent surgery on his knee on December 1, 2010 and February 22, 2011.  *Id.*

13 at 24-29.  Upon his discharge from San Joaquin General Hospital (where the February 22, 2011

14 surgery took place), plaintiff's surgeon ordered that plaintiff should "[w]ear the knee

15 immobilizer at night" but could remove the device during the day "and do gentle range of motion

16 exercises[.]"  *Id.* at 31.  On July 7, 2011, the surgeon again recommended, in a letter to prison

17 physicians Dr. Deams and Dr. Bal, that plaintiff be provided "an anterior cruciate ligament

18 brace[.]"  *Id.* at 45.

19        Throughout 2010 and 2011, plaintiff submitted numerous requests for medical care for

20 knee pain.  *Id.* at 50-60 (dated April 13, 2010; June 15, 2010; October 31, 2010; March 10, 2011;

21 March 29, 2011; April 1, 2011; April 2, 2011; April 3, 2011; April 5, 2011; April 20, 2011; April

22 27, 2011).

23        The complaint's attachments further reveal that, during the same period, plaintiff

24 submitted at least three prison grievances alleging that he was being denied an adequate knee

25 brace.  In the first, Log No. SAC 10-10-11382 (filed on May 24, 2010), plaintiff wrote that his

26 knee was unstable after major knee surgery to repair his ACL and that he needed a stronger

1   brace. *Id.* at 9.  Plaintiff alleged that defendant Hamkar was deliberately indifferent to his

2   serious medical needs by delaying and refusing to provide plaintiff with a stronger brace. *Id.* at

3   10.  Hamkar responded at the first level of review on July 8, 2010 that "[o]ur plan [regarding the

4   brace] is to wait for your MRI and an orthopedic evaluation and further recommendation." *Id.* at

5   7.  Plaintiff alleges that he submitted this appeal to the third level review office by mail on July

6   15, 2010, but that he never received any response. *Id.* at 6.

7        In the second appeal, SAC HC 1102960/SAC 10-11-1195 (filed on January 5, 2011),

8   plaintiff alleged that the brace he had been provided had been altered and rendered useless. *Id.*

9   at 14.  Plaintiff requested an unaltered brace. *Id.*  At the first level of review, M. Linggi, RN,

10   responded that the brace was altered for security reasons and referred plaintiff to his physician

11   for "more information on the effectiveness of the brace[.]" *Id.* at 13.  Linggi further noted, "you

12   currently have a new brace that you report to be effective." *Id.*  Plaintiff also submitted an

13   "Inmate Request for Interview" on January 6, 2011, alleging that defendants had confiscated his

14   brace and replaced it with the altered brace. *Id.* at 32.  Linggi responded to the request, "I

15   interviewed you yesterday regarding this exact issue and Dr. Hamkar personally informed me

16   that your current brace is appropriate." *Id.*

17        In the third appeal, SAC HC 11014068 (filed April 23, 2011), plaintiff alleged that he

18   was being denied necessary treatment for his knee pain and a knee brace. *Id.* at 17.  Hamkar

19   responded at the first level of review on May 23, 2011, granting the appeal. *Id.* at 16.  Hamkar

20   examined plaintiff, determined that his ACL had been re-injured, and ordered a brace. *Id.*

21        Plaintiff alleges that, as a result of Hamkar's deliberately indifferent conduct, plaintiff's

22   knee condition deteriorated. *Id.* at 4.  He claims that the failure of defendants to afford plaintiff a

23   proper brace caused plaintiff's knee surgery to fail, caused plaintiff to incur significant arthritic

24   changes, and required that plaintiff undergo a total knee arthroplasty. *Id.* at 5-6.  In addition to

25   monetary damages, plaintiff seeks an order directing Hamkar "to issue prescribed medical

26   appliance." *Id.* at 3.

**II.      Rule 12(b)(6) Standard and Exhaustion**

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55, 562-63, 570 (2007)  (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of his claims that would entitle him to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard").  Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action. *Id.* at 1965.  Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citation omitted).  Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

The complaint's factual allegations are accepted as true.  *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984).  The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor.  *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  General allegations are presumed to include specific facts necessary to support the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998).  Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987)).  The court may consider matters of public record, including pleadings, orders, and other

papers filed with the court.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).  "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.  *Sprewell*, 266 F.3d at 988.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ."  18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002).  To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline the action requested.  The applicable regulations have required, since January 28, 2011, that the

inmate "list all staff member(s) involved" and "describe their involvement[.]"  Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2011).  The grievance process has three levels of review to address an inmate's claims, subject to certain exceptions.  *See* Cal. Code Regs. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id.* § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  For a remedy to be "available," there must be the "possibility of some relief . . . ."  *Booth*, 532 U.S. at 738.  Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

In the Ninth Circuit, motions to dismiss for failure to exhaust administrative remedies are normally brought under Rule 12(b).  *See Albino v. Baca*, 697 F.3d 1023, 1029 (9th Cir. 2012). Nonetheless, it remains well established that credibility of witnesses over material factual disputes cannot be resolved on paper.  Thus, when ruling on an exhaustion motion requires the court to look beyond the pleadings in the context of disputed issues of fact, the court must do so under "a procedure closely analogous to summary judgment."  *Wyatt v. Terhune*, 315 F.3d 1108, 1119, n.14 (9th Cir. 2003).  Doing so ensures that a process is followed to test whether disputes over facts pertaining to whether plaintiff actually exhausted available remedies are truly genuine and material and therefore warrant live testimony, or whether the dispute(s) may be disposed of by unrefuted declarations and exhibits.  Therefore, following the suggestion in *Wyatt*, and because care must be taken not to resolve credibility on paper if it pertains to disputed issues

////

////

1  of fact that are material to the outcome, the undersigned applies the Rule 56 standards to

2  exhaustion motions that require consideration of materials extrinsic to the complaint.[1]  *See*

3  *Chatman v. Felker*, No. Civ. S-06-2912 LKK EFB, 2010 WL 3431806, at *2-3 (E.D. Cal. Aug.

4  31, 2010).

5        Failure to exhaust is an affirmative defense in the sense that defendants bear the burden

6  of proving plaintiff did not exhaust available remedies.  *Wyatt*, 315 F.3d at 1119.  To bear this

7  burden:

8       a defendant must demonstrate that pertinent relief remained available, whether at
   unexhausted levels of the grievance process or through awaiting the results of the
9       relief already granted as a result of that process. Relevant evidence in so
   demonstrating would include statutes, regulations, and other official directives
10      that explain the scope of the administrative review process; documentary or
   testimonial evidence from prison officials who administer the review process; and
11      information provided to the prisoner concerning the operation of the grievance
   procedure in this case . . . . With regard to the latter category of evidence,
12      information provided [to] the prisoner is pertinent because it informs our
   determination of whether relief was, as a practical matter, "available."
13

14 *Brown*, 422 F.3d at 936-37 (citations omitted).

15       Defendants' motion to dismiss included a notice to plaintiff informing him of the

16 requirements for opposing a motion to dismiss for failure to exhaust available administrative

17 remedies.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Stratton v. Buck*, 697 F.3d 1004,

18 1008-10 (9th Cir. 2012); *Wyatt v. Terhune*, 315 F.3d 1108, 1115, 1120 n.15 (9th Cir. 2003).

19 **III.**  **Analysis**

20       Defendants advance four arguments in support of dismissal: (1) that plaintiff failed to

21 exhaust his administrative remedies; (2) that the complaint does not state a claim; (3) that

22 plaintiff's request for injunctive relief is barred because it is encompassed by the pending class

23 actions *Plata v. Schwarzenegger* and *Armstrong v. Brown*; and (4) that defendants are entitled to

24

25     [1] Here, defendants rely on testimonial evidence in the form of declarations from two
   prison officials and a documentary record to establish the facts in support of their contention that
26 plaintiff failed to exhaust.

1  qualified immunity.  Each argument will be addressed in turn.

2      **A.**    **Exhaustion**

3        Defendants allege that plaintiff failed to file and exhaust an administrative appeal

4  regarding the allegations of the complaint prior to filing suit.  Defendants argue that, even if the

5  court were to accept plaintiff's allegations that the prison failed to properly respond to his appeal

6  Log No. SAC 10-10-11382 after plaintiff submitted it to the third level of review, that appeal

7  could not exhaust plaintiff's allegations because it pre-dated January 5, 2011, the date that

8  plaintiff claims his brace was confiscated by defendant Thorpe under the direction of defendant

9  Hamkar.  Defendants note that Log No. SAC 10-10-11382 does not contain any allegation

10  regarding the confiscation of the brace.  Defendants' evidence shows that plaintiff has not seen

11  any appeal through to the third level of review concerning the confiscation of his brace on

12  January 5, 2011.  Dckt. Nos. 30-5 (Declaration of J.D. Lozano ISO Defs.' Mot. to Dism.), 30-6

13  (Decl. of L.D. Zamora ISO Defs.' Mot. to Dism.).

14        Plaintiff does not dispute defendants' evidence.  Instead, he argues again that the

15  institution disregarded Log No. SAC 10-10-11382 when he filed it at the third level.  As

16  defendants point out, however, that appeal predated and thus did not challenge the confiscation

17  of his brace on January 5, 2011.  Plaintiff points to no other grievance he filed challenging that

18  alleged misconduct.  Accordingly, there is no genuine dispute as to any fact material to the

19  question of whether plaintiff failed to exhaust his claim that the defendants wrongfully

20  confiscated his knee brace on January 5, 2011.  Plaintiff's claim against Thorpe solely concerns

21  that incident.  Accordingly, Thorpe must be dismissed from this action.

22        Defendants have not established that plaintiff failed to exhaust his administrative

23  remedies with regard to the remaining allegations against defendant Hamkar, however.  Plaintiff

24  does not allege simply that defendant Hamkar was deliberately indifferent for ordering his brace

25  confiscated on January 5, 2011.  Plaintiff also alleges that Hamkar repeatedly denied him an

26  adequate knee brace over the course of several years beginning in July 2008.  Dckt. No. 13 at 4.

1   Defendants' motion to dismiss is silent as to whether plaintiff's grievances served to exhaust this

2   claim. Accordingly, defendants' motion to dismiss for failure to exhaust with regard to

3   defendant Hamkar should be granted only as to plaintiff's allegations concerning the

4   confiscation of his brace on January 5, 2011 and otherwise denied.

5           **B.      Adequacy of the Complaint**

6           Defendants next argue that plaintiff's complaint fails to state a claim for deliberate

7   indifference. According to defendants, an attachment to plaintiff's complaint shows that his

8   earlier knee surgery failed not because he was denied a proper brace, but because he suffered

9   "significant arthritic changes." *See* Dckt. No. 13 at 45 (letter from plaintiff's surgeon stating, "I

10  feel that his main problem for failure is his significant arthritic changes medially."). Plaintiff's

11  complaint alleges, however, that he suffered these arthritic changes *because* he was denied a

12  proper brace. *Id.* at 6. The exhibits do not establish beyond controversy that plaintiff's

13  corrective knee surgery failed for some reason other than the denial of an adequate brace.

14          Defendants also argue that plaintiff's difference of opinion with defendant Hamkar as to

15  what kind of brace he needed does not establish deliberate indifference. From the attachments to

16  the complaint, however, it appears that sometimes plaintiff was not provided a brace at all and

17  other times he was provided an altered brace. It is a disputed question whether how defendant

18  Hamkar responded to plaintiff's knee injury and whether that response was medically

19  reasonable. Clearly, plaintiff's surgeon concluded that he needed an "anterior cruciate ligament

20  brace such as a double upright knee brace for his right knee" to improve stability. *Id.* at 45 (Dr.

21  Dowback's letter of July 7, 2011 to prison physicians Dr. Deams and Dr. Bal.). Moreover, the

22  complaint and its attachments show that throughout 2010 and 2011, plaintiff submitted numerous

23  requests for medical care for knee pain. *Id.* at 50-60 (dated April 13, 2010; June 15, 2010;

24  October 31, 2010; March 10, 2011; March 29, 2011; April 1, 2011; April 2, 2011; April 3, 2011;

25  April 5, 2011; April 20, 2011; April 27, 2011). They also show that during that same period,

26  plaintiff submitted at least three prison grievances alleging that he was being denied an adequate

knee brace.  The court cannot determine that at this stage of the proceedings whether the refusal of a brace at some times, and the providing of only a modified brace at other times, were reasonable responses to plaintiff's medical need for a knee brace.  The record is not clear as to what periods no brace was provided.  It is also unclear as to what modifications were made to the brace that was sometimes provided, who modified it, the qualifications of that person(s), and how the changes to that brace altered the way it functioned.  As pleaded, plaintiff's complaint and its attachments adequately state an Eighth Amendment claim against defendant Hamkar.[2]

### C.   *Plata* and *Armstrong*

Defendants next argue that plaintiff's request for injunctive relief is barred because it is encompassed by the pending class actions *Plata v. Schwarzenegger*, No. C-01-1351 TCH (N.D. Cal.) and *Armstrong v. Brown*, No. 4:94-cv-2307 (N.D. Cal.).  Defendants argue that plaintiff's individual request for injunctive relief falls within the *Plata* and *Armstrong* actions.[3]  The Ninth Circuit has held, however, that *Plata* does not bar an individual plaintiff from seeking injunctive relief solely on his own behalf, because *Plata* sought systemic relief rather than individual relief. *Pride v. Correa*, 501 Fed. Appx. 701, 705 (9th Cir. 2012).  There is no reason why this rule should not apply to *Armstrong* as well.  *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1072-74 (9th Cir. 2010) (discussing plaintiffs' request for system-wide injunctive relief). Accordingly, *Plata* and *Armstrong* do not bar plaintiff's request for individual injunctive relief.

////

////

////

---

[2] The court need not consider the adequacy of plaintiff's complaint against defendant Thorpe, as plaintiff's claim against her has not been exhausted.

[3] The court grants defendants' request for judicial notice of the Stipulation for Injunctive Relief entered on June 13, 2002 in the *Plata* action and the Remedial Plan entered in *Armstrong v. Davis*, amended January 3, 2001 (Docket. No. 60-4).  Fed. R. Evid. 201(b); *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (stating that a court may take judicial notice of court records in another case).

1          **D.      Qualified Immunity**

2          Lastly, defendants argue that they should be afforded qualified immunity.  The doctrine

3   of qualified immunity shields government officials from liability for damages for conduct that

4   does not violate a clearly established federal right of which a reasonable person would have

5   known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Because plaintiff has not exhausted his

6   claim against defendant Thorpe, the court need only consider whether defendant Hamkar should

7   be afforded qualified immunity.

8          For the reasons discussed above, plaintiff has stated a claim that defendant Hamkar

9   violated his Eighth Amendment rights.  Therefore, Hamkar's argument that based on the

10  complaint and its attachments he is entitled qualified immunity because he simply did not violate

11  plaintiff's rights fails for the same reasons.

12         Hamkar also argues that, even if he did violate plaintiff's rights, a reasonable person in

13  defendant Hamkar's situation would not have known that his actions violated the plaintiff's

14  rights because the *Armstrong* Remedial Plan allowed institutions to modify healthcare appliances

15  based on security concerns.  However, there is clear evidence attached to the complaint that

16  plaintiff's surgeon informed the institution's medical staff that plaintiff required a brace.

17  Plaintiff alleges that at times he was provided *no* brace.  Further, based on the allegations of the

18  complaint it is far from undisputed that the altered brace defendant Hamkar provided to plaintiff

19  was adequate to accommodate plaintiff's medical needs and thus discharge the obligations set

20  forth in the Remedial Plan.  Dckt. No. 30-4 at 44 (providing that a necessary medical appliance

21  may be modified for security reasons to "accommodate" an inmate's needs but that "[o]nly under

22  exceptional circumstances will an appliance be rejected and an alternate means provided.").

23  Accordingly, defendant Hamkar's request for qualified immunity must be denied at this time.

24  ////

25  ////

26  ////

1  **IV.      Order and Recommendation**

2        Defendants did not respond to the September 18, 2013 Order to "within 30 days"

3  complete and return the form indicating whether they consent to proceed before a magistrate

4  judge.  Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court randomly assign a

5  United States District Judge to this action.

6        Further, IT IS HEREBY RECOMMENDED that defendants' December 28, 2012 motion

7  to dismiss (Dckt. No. 30) be granted in part and that plaintiff's claims against defendants Thorpe

8  and Hamkar for confiscating his knee brace on January 5, 2011 be dismissed without prejudice

9  for failure to exhaust administrative remedies and otherwise denied.

10        These findings and recommendations are submitted to the United States District Judge

11  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12  after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

15  within the specified time may waive the right to appeal the District Court's order. *Turner v.*

16  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

17  Dated:  July 18, 2013.

18

19                      EDMUND F. BRENNAN
                        UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26