UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE INGRAM, | No. 2:11-cv-2507-WBS-EFB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| B. HAMKAR, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendant Hamkar, the only remaining defendant, has filed a motion for summary judgment. ECF No. 61. In response, plaintiff filed a Statement of Disputed Facts. ECF No. 64. For the reasons that follow, it is recommended that Hamkar's motion for summary judgment be granted.

## I. BACKGROUND[1]

Plaintiff claims that Hamkar denied him adequate medical care while plaintiff was housed at California State Prison, Sacramento ("CSP–Sac"). ECF No. 13. Plaintiff alleges that he had a right knee injury that presented a serious medical need and that Hamkar, his prison physician, was deliberately indifferent to that need from July 15, 2008 until September 22, 2011 (the date he filed his complaint). *Id.* Plaintiff alleges that Hamkar: (1) did not provide a stable brace for

---

[1] This action proceeds on plaintiff's verified amended complaint. ECF No. 13. The following statement of facts is based entirely on the allegations in that amended complaint.

1

plaintiff's knee at various times during that period, and (2) did not order that plaintiff be housed in the prison's Outpatient Housing Unit, where his movement would have been limited. *Id.* at 4, 13.[2]

Medical records attached to the amended complaint show that plaintiff submitted a request for a knee brace on April 13, 2010, *id.* at 52 ("I need a new knee brace and having pain in right knee"), and that an orthopedist at San Joaquin General Hospital ("SJGH") recommended that plaintiff be provided an "ACL brace" on October 8, 2010. *Id.* at 12. Plaintiff submitted another request for a brace on October 31, 2010. *Id.* at 50 ("I need a brace on rt knee . . . and I'm in a great deal of pain."). Plaintiff underwent surgery on his knee on December 1, 2010 and again on February 22, 2011. *Id.* at 24-29. Upon his discharge after the February 22, 2011 procedure, plaintiff's surgeon ordered that plaintiff "[w]ear the knee immobilizer at night" but could remove the device during the day "and do gentle range of motion exercises[.]" *Id.* at 31. On July 7, 2011, the surgeon suggested that plaintiff "would benefit from an anterior cruciate ligament brace." *Id.* at 45. The surgeon also noted that plaintiff's two ACL surgeries failed and that the "main problem for failure is his significant arthritic changes medially." *Id.*

Throughout 2010 and 2011, plaintiff submitted numerous requests for medical care for knee pain. *Id.* at 50-60 (requests dated April 13, 2010; June 15, 2010; October 31, 2010; March 10, 2011; March 29, 2011; April 1, 2011; April 2, 2011; April 3, 2011; April 5, 2011; April 20, 2011; April 27, 2011). The attachments to the complaint further reveal that, during the same period, plaintiff submitted at least three prison grievances alleging he was being denied an adequate knee brace. In the first, Log No. SAC 10–10–11382 (filed on May 24, 2010), plaintiff wrote that his knee was unstable after major knee surgery to repair his ACL and that he needed a stronger brace. *Id.* at 9. Plaintiff alleged that Hamkar was delaying and refusing to provide plaintiff with a stronger brace. *Id.* at 10. Hamkar responded at the first level of review on July 8, 2010 that "[o]ur plan [regarding the brace] is to wait for your MRI and an orthopedic evaluation

/////

---

[2] The court previously dismissed plaintiff's claims concerning Hamkar's alleged confiscation of plaintiff's knee brace on January 5, 2011. ECF No. 36.

2

and further recommendation." *Id.* at 7.  Plaintiff alleges that he submitted this appeal to the third level review office by mail on July 15, 2010, but that he never received any response. *Id.* at 6.

In the second appeal, SAC HC 1102960/SAC 10–11–1195 (filed on January 5, 2011), plaintiff alleged that the brace he had been provided had been altered and rendered useless. *Id.* at 14.  Plaintiff requested an unaltered brace. *Id.*  At the first level of review, M. Linggi, RN, responded that the brace was altered for security reasons and referred plaintiff to his physician for "more information on the effectiveness of the brace[.]" *Id.* at 13.  Linggi further noted, "you currently have a new brace that you report to be effective." *Id.*  Plaintiff also submitted an "Inmate Request for Interview" on January 6, 2011, alleging that defendants had confiscated his brace and replaced it with the altered brace. *Id.* at 32.  Linggi responded to the request, "I interviewed you yesterday regarding this exact issue and Dr. Hamkar personally informed me that your current brace is appropriate." *Id.*

In the third appeal, SAC HC 11014068 (filed April 23, 2011), plaintiff alleged that he was being denied necessary treatment for his knee pain and a knee brace. *Id.* at 17.  Hamkar responded at the first level of review on May 23, 2011, granting the appeal. *Id.* at 16.  Hamkar examined plaintiff, determined that his ACL had been re-injured, and ordered a brace. *Id.*

Plaintiff alleges that, as a result of Hamkar's deliberately indifferent conduct, plaintiff's knee condition deteriorated. *Id.* at 4.  He claims that the failure of defendants to afford plaintiff a proper brace caused plaintiff's knee surgery to fail, caused plaintiff to incur significant arthritic changes, and required that plaintiff undergo a total knee arthroplasty. *Id.* at 5-6.  In addition to monetary damages, plaintiff seeks an order directing Hamkar "to issue prescribed medical appliance." *Id.* at 3.

**II. SUMMARY JUDGMENT**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

(1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the

5

proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with his motion for summary judgment, Hamkar advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 61-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III. ANALYSIS**

As the party moving for summary judgment, Hamkar bears the initial responsibility of presenting the basis for his motion and identifying those portions of the record that he believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. In his motion for summary judgment—which is based on and includes approximately 350 pages of documents relating to plaintiff's medical care in prison, *see* ECF Nos. 61-4, 61-5, 61-6, 61-7— Hamkar argues that there is insufficient evidence for a jury to find that he was deliberately indifferent to plaintiff's serious medical needs. ECF No. 61-2 at 5-7. Proper analysis of Hamkar's argument requires review of the standard for deliberate indifference and the submitted evidence.[3]

/////

---

[3] Hamkar also argues that summary judgment in his favor is appropriate because he is entitled to qualified immunity and because plaintiff's request for injunctive relief is moot. Because Hamkar is entitled to summary judgment on the insufficiency of plaintiff's evidence, a discussion of his other arguments is not necessary.

### A. Eighth Amendment Deliberate Indifference

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment, or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

It is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi*, 391 F.3d at 1057.

As discussed below, the core dispute raised by plaintiff is that the knee brace he was provided, which did not have metal staves for support, was not stable. He claims that the failure to order a stable brace caused deterioration of his knee, which constitutes deliberate indifference to his medical needs.

/////

**B. The Medical Evidence**

Hamkar submits medical evidence which indicates that after meeting with plaintiff on August 18, 2008, he ordered plaintiff a knee brace, an MRI of plaintiff's knee, a CT scan of plaintiff's neck, and a follow-up appointment. Def.'s Statement of Undisputed Facts ("Def.'s SUF") No. 8 (ECF No. 61-3) (citing ECF No. 61-4 at 27-29); *see also* Pl.'s Statement of Disputed Facts No. 5 ("Pl.'s SDF") (ECF No. 64) ("On Aug. 18, 2008 [] Hamkar ordered a[n] M.R.I on Plaintiff['s] right knee.").[4] Plaintiff was not housed at CSP-Sac from November 20, 2008 to September 16, 2009, and he did not meet with Hamkar again until October 22, 2009. Def.'s SUF Nos. 12-14, 17. Plaintiff had surgery on his knee while he was away from CSP-Sac. Def.'s SUF No. 13 (citing ECF No. 61-4 at 51-57).

October 22, 2009, Hamkar examined and ordered a knee-high stocking for plaintiff. Def.'s SUF No. 17 (citing ECF No. 61-4 at 67). On February 16, 2010, Hamkar requested physical therapy for plaintiff. Def.'s SUF No. 18 (citing ECF No. 61-4 at 77). On March 29, 2010, plaintiff requested a different brace and an appointment with a doctor. Def.'s SUF No. 19 (citing ECF No. 61-4 at 78). On April 21, 2010, Hamkar ordered an x-ray of plaintiff's knee and submitted a request for an MRI. Def.'s SUF No. 22 (citing ECF No. 61-4 at 81-82). Hamkar contends that plaintiff was in possession of a knee stabilizer at that time. *Id.* Plaintiff received an MRI on August 16, 2010. Def.'s SUF No. 26 (citing ECF No. 61-4 at 93).

On August 31, 2010, Hamkar submitted a request for orthopedic surgery for plaintiff. Def.'s SUF No. 27.[5] On October 8, 2010, a consulting physician at SJGH met with plaintiff and recommended "repeat surgical intervention" because "a brace is not going to be enough to hold

---

[4] Plaintiff's Statement of Disputed Facts is essentially an unverified declaration. To the extent that the facts stated therein are based on plaintiff's personal knowledge, his testimony on those subjects could be presented in admissible form at trial, and, accordingly, it is considered here in determining the propriety of summary judgment. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (concluding that, at the summary judgment phase, a court may consider evidence that is inadmissible in form, so long as its contents can be presented in admissible form at trial).

[5] Although Hamkar's Statement of Undisputed Facts omits the citation, the supporting document is at ECF No. 61-4 at 96.

8

[plaintiff's knee] in place." ECF No. 61-4 at 98-99. The consulting physician also recommended an ACL brace. *Id.* On October 15, 2010, Hamkar submitted a request for repeat ACL surgery. Def.'s SUF No. 29 (citing ECF No. 61-5 at 1). On October 22, 2010, Hamkar ordered an ACL brace for plaintiff. Def.'s SUF No. 30 (citing ECF No. 61-5 at 3).[6] That brace was delivered to plaintiff on January 5, 2011, but he refused it because there was no metal on the inside. *Id.*; *see also* Pl.'s SDF No. 14 ("The A.C.L. brace was ordered Oct. 22, 2009, but was not issued till Jan. 5, 2011 and it had been altered by staff.").

On December 1, 2010, plaintiff underwent arthroscopic surgery at SJGH. Def.'s SUF No. 32 (citing ECF No. 61-5 at 13). The surgeon there advised plaintiff that he already had arthritic changes in his right knee, that he might need a total knee arthroplastly later if the surgery did not work, and that he would have lingering pain after the surgery. *Id.* Plaintiff stated that he understood the surgeon's advisements. *Id.*

On January 10, 2011, Hamkar ordered that plaintiff be provided a mobility impairment vest. Def.'s SUF No. 39 (citing ECF No. 61-5 at 45). On February 7, 2011, plaintiff met with the consulting physician at SJGH.[7] Def.'s SUF Nos. 34 (citing ECF No. 61-4 at 7) and 40 (citing ECF No. 61-5 at 47). On February 15, 2011, a different prison physician requested that plaintiff be scheduled for surgery. Def.'s SUF No. 41 (citing ECF No. 61-5 at 51). Plaintiff was sent out for that surgery on February 22, 2011. Def.'s SUF No. 42 (citing ECF No. 61-5 at 59).

On March 24, 2011, plaintiff returned to SJGH. Def.'s SUF No. 43 (citing ECF No. 61-5 at 65). The physician there ordered that plaintiff's knee immobilizer be discontinued. Def.'s SUF No. 43 (citing ECF No. 61-5 at 79). On May 6, 2011, a different prison physician ordered plaintiff a double-hinged knee brace with either plastic or metal staves for support. Def.'s SUF

---

[6] Plaintiff's Statement of Disputed Facts includes both the October 8, 2010 letter from the consulting physician at SJGH and Hamkar's October 22, 2010 order for an ACL brace. *See* ECF No. 64 at 22, 27.

[7] Hamkar suggests that this event occurred on "December 7, 2012." Def.'s SUF No. 34. Plaintiff notes that he was not sent back to the hospital on that date. Pl.'s SDF No. 16. The exhibit attached to Hamkar's motion indicates that February 7, 2011—not December 7, 2012—is the correct date. *See* ECF No. 61-4 at 7.

No. 46 (citing ECF No. 61-5 at 92). On May 23, 2011, Hamkar ordered a knee immobilizer for plaintiff. Def.'s SUF No. 47 (citing ECF No. 61-5 at 94); *see also* Pl.'s SDF No. 20 ("Plaintiff had the knee immobilizer from May 23, 2011 until he returned it.").

On June 13, 2011, Hamkar requested an orthopedic follow-up appointment for plaintiff. Def.'s SUF No. 48 (citing ECF No. 61-5 at 97). On July 7, 2011, a physician at SJGH suggested plaintiff "would benefit from an anterior cruciate ligament brace." ECF No. 61-5 at 99. The surgeon also noted that plaintiff's two ACL surgeries failed and that the "main problem for failure is his significant arthritic changes medially." *Id.* On August 17, 2011, plaintiff refused his knee brace, claiming that the glue used on the brace made his skin break out. Def.'s SUF No. 50 (citing ECF No. 61-5 at 102). On August 30, 2011, Hamkar ordered a knee brace for plaintiff and increased plaintiff's pain medication. Def.'s SUF No. 51 (citing ECF No. 61-5 at 103). Although Hamkar denied plaintiff's request for a double-hinged knee brace on August 30, 2011, he ordered that brace for plaintiff on October 12, 2011. Def.'s SUF Nos. 52-53 (citing ECF No. 61-5 at 104,108).[8]

**C. Analysis**

The record before the court cannot support a claim that Hamkar was inattentive to plaintiff's knee. To the contrary, the extensive medical records demonstrate that plaintiff underwent at least three knee surgeries during the time period identified in the complaint and that Hamkar ordered: multiple knee braces, a knee-high stocking, an ACL brace, a knee immobilizer, a double-hinged knee brace, an x-ray, multiple MRIs, physical therapy, multiple knee surgeries, an impairment vest, and a consultation and follow-up appointments with an orthopedic surgeon. The medical records submitted by Hamkar document his efforts to treat plaintiff's knee and show the reasons for the methods employed. There is little dispute as to what he did to treat plaintiff. Indeed, plaintiff does not dispute most of Hamkar's account. Plaintiff included with his amended complaint and Statement of Disputed Facts many of the same documents that Hamkar submitted in support of his motion for summary judgment. But plaintiff quarrels with the initial choice to

---

[8] Hamkar does not appear to dispute that he did not order plaintiff to be housed in the prison's Outpatient Housing Unit.

10

provide a brace that did not contain metal staves. Plaintiff argues that this "caused the deterioration" of plaintiff's knee. ECF No. 13 at 4; *see also* Pl.'s SDF No. 25 ("[Hamkar's] failure to provide the recommen[d]ed medical appliance made the arthritic changes in plaintiff['s] knee worsen faster and help to cause the failure of the operation.").

The only evidence plaintiff offers in support of his assertion of indifference are his own characterizations and conclusory statements. *Taylor*, 880 F.2d at 1045 ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). Although plaintiff is competent to testify as to his own observations as to the stability of the knee braces that Hamkar ordered, he has not established that he can competently testify on causation and the alleged consequences of Hamkar's failure to order a stable knee brace.[9] *See* Federal Rule of Civil Procedure 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1022 (9th Cir. 2010) (noting that the allegations of a verified complaint may serve as an affidavit for purposes of summary judgment if they are based on personal knowledge and set forth the requisite facts with specificity.).

More importantly, the core dispute plaintiff raises is not over what occurred, but whether the initial choice of the appliance for his knee was constitutionally defective. The surgeon, Dr. Dowbak, had determined as of July 2011 that the attempted surgical repair of the knee had failed and future procedure would, too, due to significant arthritic changes and that plaintiff, in time, would require a knee replacement. ECF No. 61-5 at 109. During the interim, he suggested that a double upright knee brace might improve stability. Progress notations of August 17, 2011 indicate that plaintiff "was given a brace but returned it because the glue used on the brace made his skin break out." *Id.* at 102. Dr. Hamkar's report of August 30, 2011 further explains that:

> due to custody issues and because of the metal pieces in them, [a double upright knee brace] was not approved and the patient was

---

[9] Thus, the dispute over whether Hamkar's failure to order a "stable" brace "caused the deterioration" of plaintiff's knee and resulted in the need for subsequent surgeries is not genuine. *See Anderson*, 477 U.S. at 248.

11

> adamant about receiving this. However, the most recent recommendation from the orthopedic surgeon is just a knee brace which he does not want. He was at one point even given a knee immobilizer which he refused. He was wearing it initially but subsequently when we glued the metal pieces into the knee brace so he could not manipulate or remove them, he refused them and returned it back, said that he did not want the glue on the brace.

*Id.* at 104. Significantly, Hamkar ordered plaintiff a neoprene brace as recommended by the orthopedic surgeon and gave plaintiff a chrono for a bottom bunk, a wooden cane, and work restrictions and increased his pain medications. *Id.* On further follow up, Hamkar ordered a double hinged knee brace, writing that:

> The non-hinged neoprene braces do not give enough stability. Anything but a double hinged brace not effective. Hinge can be metal or plastic, depending on availability. Patient aware if medical appliance is tampered with or altered in any fashion it will be confiscated due to safety and security.

*Id.* at 108 (Physician's Orders of October 12, 2011). Approximately two weeks later, plaintiff was transferred to CSP-Solano.

Thus, the material dispute is not over what actually occurred but rather whether the initial offer of a non-metallic brace violated the Eighth Amendment. Hamkar attempted to secure for plaintiff a brace containing metallic parts but modified in a manner that would meet prison security requirements; i.e. gluing of the pieces so that they could not be removed. Plaintiff objected to the modification. Given that response, Hamkar then chose a neoprene brace. When that failed to provide the needed stability, Hamkar finally ordered the double-hinged brace with the admonition that it would be confiscated if it were tampered with.

As defendant argues, for plaintiff to prevail on a claim involving choices between alternative courses of treatment, he must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). There is simply no evidence of that here. Hamkar's treatment efforts manifest considerable regard for plaintiff's knee and several efforts to address plaintiff's medical needs and still comply with prison security requirements as to the possession of metal parts in the device. That Hamkar

/////

attempted other options prior to the double-hinged brace without glue did not render that treatment constitutionally defective.[10]

### D. Conclusion

The undisputed evidence indicates that plaintiff underwent at least three knee surgeries—one of which Hamkar requested—during the time period specified in plaintiff's complaint. The undisputed evidence also indicates that Hamkar ordered multiple knee braces, a knee-high stocking, an ACL brace, a knee immobilizer, a double-hinged knee brace, an x-ray, multiple MRIs, physical therapy, multiple knee surgeries, an impairment vest, and a consultation and follow-up appointments with an orthopedic surgeon. Plaintiff may be dissatisfied with the results of Hamkar's efforts, but the record here cannot support a finding of indifference. Deliberate indifference is an essential element of plaintiff's Eighth Amendment claim. He bears the ultimate burden of proving that element at trial and in opposing this motion must present evidence upon which a reasonable fact finder could resolve that question his favor. He has failed to do so. Accordingly, defendant Hamkar is entitled to summary judgment.

## IV. RECOMMENDATION

Accordingly, it is hereby RECOMMENDED that defendant Hamkar's motion for summary judgment (ECF No. 61) be granted and that the Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

/////

/////

/////

---

[10] Because plaintiff cannot establish that Hamkar acted with deliberate indifference the remaining disputes are not material. *See Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 21, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14